UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MAPLE HEIGHTS NEWS, et al.,** | ) | CASE NO.  1:15CV53 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| **JEFFREY A. LANSKY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #24) of Plaintiff, William Brownlee ("Brownlee"), to Dismiss Counterclaim of Defendant Jeffrey Lansky.  For the following reasons, the Motion is denied.

**I. FACTUAL BACKGROUND**

On January 12, 2015, Plaintiffs filed the instant civil rights Complaint against certain public officials of the City of Maple Heights for, *inter alia*, violation of their First Amendment rights.  On April 17, 2015, Defendant, Jeffrey A. Lansky ("Lansky"), filed a Counterclaim against Brownlee.

Lansky is the Mayor of the City of Maple Heights.  Brownlee is a member of the City Council and he publishes a "news media reporting service" on the internet.  On January 14, 2015, Brownlee was a guest on a morning radio program, broadcast throughout Northeast Ohio on AM 1420 WHK, called "The Bob Frantz Authority."  According to the Counterclaim, "Brownlee falsely accused Lansky of committing one or more crimes by illegally gaining access to Brownlee's confidential tax records."  (ECF DKT #19 at ¶ 10).  Moreover, "Brownlee falsely claimed that Lansky has also illegally obtained confidential tax records for one or more other Maple Heights City Councilpersons . . . thereby falsely accused Lansky of committing one or more crimes."  (*Id*. at ¶ 11).  At a public City Council meeting, on January 21, 2015, "Brownlee asserted, as fact, that Jeff Lansky had tried to intimidate him in the 'crassest and most illegal of ways, by disclosing [his] private income tax information, which he unlawfully gained.'" (*Id*. at ¶ 12).  Allegedly, Brownlee said that obtaining and disclosing private tax information had become Lansky's "practice;" so, Brownlee decided to file this lawsuit.

Lansky alleges that Brownlee's statements were defamatory *per se* and *per quod*; that Brownlee's statements were materially false and not protected by privilege or immunity; that Brownlee knew the statements were false when he made or published them, or he made them with reckless disregard for the truth, or he was grossly negligent in making them; and he published them with actual malice.  (*Id*. at ¶¶ 13-15).  Brownlee broadcast the statements over the AM radio waves and encouraged those who followed him on Facebook to tune in to the program.  (*Id*. at ¶ 17).  As a direct and proximate result of Brownlee's conduct, Lansky suffered embarrassment, damage to his reputation and emotional pain and suffering.  (*Id*. at

¶ 18).

Brownlee moves for dismissal, arguing that Lansky's Counterclaim fails to state a claim; is "replete with nothing more than labels and conclusions or formulaic recitations of the elements of a state law defamation claim;" and relies upon information protected by legislative privilege and legislative immunity.

## II. LAW AND ANALYSIS

### Standard of Review

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)). The court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

**Defamation**

Under Ohio law, defamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389 (2012), citing *Jackson v. Columbus*, 117 Ohio St.3d 328 (2008).

> To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem.*, 133 Ohio St.3d at 389, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1996).

The United States Supreme Court has held that a higher standard applies when public officials bring defamation actions. *New York Times v. Sullivan*, 376 U.S. 254 (1964). A public figure, such as Maple Heights Mayor Lansky, may recover only if he proves that the defamatory statement was made with actual malice, i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id*. at 280.

Defamation may be either *per quod* or *per se*. "In defamation *per quod*, a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove

damages." *Kendel v. Local 17-A United Food and Commercial Workers*, 835 F.Supp.2d 421, 433 (2011); *Dodley v. Budget Car Sales, Inc.*, 1999 WL 235861, (Ohio Ct.App.1999).

Defamation *per se* is when a statement, on its face, is defamatory and damages are presumed. *Kendel*, 835 F.Supp.2d at 433; *Moore v. P.W. Publishing Co.*, 3 Ohio St.2d 183 (1965); *Wagner v. Circle W. Mastiffs*, 732 F.Supp.2d 792, 805 (S.D.Ohio 2010).

> In order to be actionable *per se*, the allegedly defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) the words tend to subject a person to public hatred, ridicule, or contempt. *Kendel*, 835 F.Supp.2d at 433; *Am. Chem. Soc. v. Leadscope*, 2010 WL 2396544, *12 (Ohio Ct.App.2010).

**Legislative privilege**

With respect to Congress and state legislative bodies, there is an absolute privilege for defamatory utterances in any speech, debate, vote or report of action done in session, without regard to the motive or reasonableness of the conduct. *McGovern v. Martz*, 182 F.Supp. 343 (U.S.D.C.1960). The absolute privilege has been applied to defamatory statements made by members of local governing bodies of Ohio political subdivisions. *Costanzo v. Gaul*, 62 Ohio St.2d 106, 110 (1980).

> We believe that the rule of absolute privilege may reasonably be applied to utterances made during the course of official proceedings by members of local governing bodies, at least where the statements relate to a matter under consideration, discussion or debate.
> \* \* \*
> We hold that an utterance or publication of a defamatory statement made by a member of a legislative body of a local governmental entity, which utterance is made other than in a legislative session or related meeting, should be afforded a qualified rather than an absolute privilege. *Id*. at 110-111.

**Defendant Lansky's Counterclaim**

Looking at the allegations of the Counterclaim, and considering them in the context of the broader lawsuit, the Court finds that the Counterclaim sufficiently states a claim that is plausible on its face.

The Counterclaim recites that Brownlee falsely accused Lansky, the Mayor, of illegally accessing Brownlee's and other councilpersons' confidential tax records. Brownlee made the allegedly defamatory statements on two occasions — the first time, on a January 14, 2015 radio broadcast and the second time, at the January 21, 2015 public City Council meeting. The alleged utterances suggested criminal activity and related to Lansky's occupation or position with the City of Maple Heights. The Counterclaim alleges that Brownlee knew the remarks were false, or recklessly disregarded whether they were true or not — thus, satisfying the required actual malice pleading standard for a public figure. Lansky alleges that, as a direct and proximate result of Brownlee's conduct, he suffered embarrassment and harm to his reputation.

The Court has considered Brownlee's argument about legislative privilege, and holds that absolute privilege is inapplicable to the January 14, 2015 radio talk show, which was outside the legislative forum. Furthermore, only fact discovery will reveal whether Brownlee's statements concerned a matter reasonably within his councilman's duties, and whether qualified privilege is available to protect Brownlee's alleged utterances on either January 14, 2015 or January 21, 2015.

### III. CONCLUSION

In sum, the Court determines that the allegations in Defendant Jeffrey A. Lansky's

Counterclaim against Plaintiff William C. Brownlee are more than the vague, conclusory allegations which are disfavored under *Twombly* and *Iqbal*. The Counterclaim states a right to relief that is more than mere speculation. Therefore, the Motion (ECF DKT #24) to Dismiss is denied.

**IT IS SO ORDERED.**

                                            **s/ Christopher A. Boyko**
                                            **CHRISTOPHER A. BOYKO**
                                            **United States District Judge**

**Dated: August 10, 2015**